**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DETRINA SOLOMON**, individually, and on behalf of others similarly situated, | : : : | |
| | : | Case No: |
| Plaintiff, | : : | Hon. |
| v. | : : | Mag. |
| **HEALTH CARE SERVICE CORPORATION**, a corporation, | : : : | |
| Defendant. | : : | |

## COLLECTIVE AND CLASS ACTION COMPLAINT

Plaintiff, Detrina Solomon ("Plaintiff"), hereby brings this Collective/Class Action Complaint against Defendant, Heath Care Service Corporation ("Defendant"), and states as follows:

## INTRODUCTION

1.      This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all similarly situated persons employed by Defendant, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and common law.

2.      Defendant, an "[i]ndependent [l]icensee of the Blue Cross and Blue Shield Association[,]" holds itself out to be "the largest customer-owned health insurer in the United States" and "serve[s] more than 18.6 million members through [it]s plans in Illinois, Montana, New Mexico, Oklahoma and Texas."[1] Defendant provides "options for employers, individuals and

---

[1] *See* https://www.hcsc.com/who-we-are/overview (last visited Sept. 14, 2023).

1

families as well as Medicare and Medicaid plans, and [it has] a network of affiliates and subsidiaries offering related health care products and services, such as life, dental, health technology and pharmacy solutions." (*Id.*).

3.      In providing the aforementioned services, Defendant employed "26,000 employees in over 60 offices across the five states [it] serve[s]" in brick and mortar call centers and in remote call center settings across the U.S.[2] More specifically, Defendant maintains brick and mortar call centers in Illinois, Montana, New Mexico, Oklahoma, and Texas.[3] Defendant used a number of titles, including, but not limited to, Customer Advocate and Correspondent Advocate to refer to its customer service representatives (collectively referred to herein as "CSRs").

4.       Defendant classified its CSRs as non-exempt and tasked them with the primary job duty of providing over-the-phone customer service.

5.       Defendant employed Plaintiff as an hourly call center employee with the job title of CSR.

6.      The United States Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant's hourly call center employees, are homogenous; in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses that are prevalent in the industry.[4]

7.      One of those abuses, which is at issue in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id.* at p. 2.

8.      More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of

---

[2] *See* https://www.hcsc.com/pdf/hcsc_annual-report_2022.pdf (last visited Sept. 15, 2023)
[3] *See* https://www.hcsc.com/contact-hcsc (last visited Sept. 15, 2023).
[4] *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), https://www.dol.gov/whd/regs/compliance/whdfs64.pdf (last visited Sept. 15, 2023).

an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id*.

9.    Defendant violated the FLSA and common law by systematically failing to compensate its CSRs for work tasks completed before and after their scheduled shifts and during their unpaid meal periods, when they were not logged into Defendant's timekeeping system, which resulted in CSRs not being paid for all overtime hours worked, overtime gap time when associated with unpaid overtime, and regular hours in non-overtime workweeks.

10.    More specifically, Defendant failed to compensate CSRs for the substantial time they spent performing activities such as turning on and booting up their computer prior to clocking in to Defendant's timekeeping system, and shutting down/logging out of various computer programs and software after they clocked out at the end of each day.

11.    Plaintiff seeks a declaration that her rights, and the rights of the putative Collective and Class members, were violated, a judgment awarding her unpaid back wages, liquidated damages, attorneys' fees and costs to make her and the putative Collective and Class whole for damages they suffered, and any other remedies to which they may be entitled, and to help ensure Defendant will not subject future workers to the same illegal conduct in the future.

12.    At the earliest time possible, Plaintiff will request that the Court authorize notice of this action pursuant to 29 U.S.C. § 216(b) to all similarly situated employees who worked for Defendant at any time in the past three years.

## JURISDICTION AND VENUE

13.     This Court has subject-matter jurisdiction over Plaintiff's FLSA claim, pursuant to 28 U.S.C. § 1331, because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq.*

14.     Additionally, this Court has jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer… in any Federal or State court of competent jurisdiction."

15.     Defendant's annual sales exceed $500,000, and Defendant employs more than two individuals; thus, the FLSA applies in this case on an enterprise basis. Defendant's CSRs engage in interstate commerce and, therefore, they are also covered by the FLSA on an individual basis.

16.     This Court has personal jurisdiction over Defendant because Defendant is headquartered in the state of Illinois and employs individuals within the state of Illinois.

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims occurred in this District and Defendant conducts business in this District.

## PARTIES

18.      Plaintiff Detrina Solomon is a resident of San Angelo, Texas and worked for Defendant as a non-exempt CSR in its Texas brick and mortar call center from approximately September 5, 2021 through December 2021. Defendant compensated Plaintiff Solomon through the payment of an hourly rate, most recently $16.25 per hour. Plaintiff Solomon signed a consent to join this collective action, which is attached as **Exhibit A**.

19.     Additional Opt-In Plaintiffs were or are employed by Defendant as CSRs during the past three years and their consent forms will also be filed in this case.

20.     Defendant, Healthcare Service Corporation, is a Delaware corporation (File No.

4

2266153) headquartered in Chicago, Illinois. Defendant maintains a registered agent for service of process listed as The Corporation Trust Company, 1209 Orange Street, Wilmington, Delaware, 19801.

**GENERAL ALLEGATIONS**

21.     Prior to hiring prospective CSRs, Defendant provided them with a written offer setting forth the job requirements and rate of pay.

22.     Defendant maintained documents demonstrating the promised hourly wage for each CSR including, but not limited to: offer letters, paystubs, and/or other payroll records.

23.     Plaintiff received an offer from Defendant to work as a CSR, and she accepted Defendant's offer with the understanding that her base hourly rate would be paid for all hours worked.

24.     Plaintiff performed under her contract with Defendant by carrying out her job duties and responsibilities. More specifically, Plaintiff answered calls from Blue Cross and Blue Shield ("BCBS") members regarding coverage, medications, procedures, and more; analyzed member and provider inquiries, initiating and coding adjustment transactions to correct and resolve said inquiries; assisted customers navigate the complexity of the healthcare industry; ensured customer needs were met on the first interaction; and collaborated with providers, families, and patients. Plaintiff provided the aforementioned customer service via inbound calls and Plaintiff utilized Defendant's applications and systems to track all events and customer service information. Plaintiff additionally performed the required unpaid off-the-clock work explained below.

25.     Defendant paid its CSRs at varying hourly rates.

26.     Defendant's CSRs, including Plaintiff, typically worked five days each week and up to, and on occasion more than, forty (40) hours per week.

27. Defendant provided training to hourly call center employees, on, *inter alia*, how to carry out their day-to-day job duties, how to track their time, how to load and log into their computer programs at the beginning of the day and how to log out at the end of the day; attendance, schedule, and call quality expectations; and Defendant's policies. The training that Defendant provided to all of its CSR was substantially, if not entirely, the same.

28. For purposes of compensation, Defendant's CSRs clocked in and out for their shifts on their computers using Defendant's timekeeping application.

29. At all relevant times, Defendant controlled Plaintiff's and all other CSRs' work schedules, duties, protocols, applications, assignments, and employment conditions.

30. Defendant required Plaintiff and all other CSRs to use a computer and a variety of essential and indispensable computer programs, applications, and servers in order to perform their job duties.

31. Defendant instructed Plaintiff and other similarly situated CSRs to be "call ready" the moment their scheduled shifts started. This required Defendant's CSRs to perform daily off-the-clock tasks prior to the start of their shifts and before they clocked into Defendant's timekeeping system. During the boot-up and login process, Defendant's CSRs often experienced technical difficulties, increasing the amount of off-the-clock work they performed that day.

32. Defendant enforced this policy through its uniform compensation, attendance, and adherence procedures and the call quality assurance system it used to monitor and grade CSRs' calls. For example, Defendant routinely evaluated, and at times disciplined, CSRs based on schedule adherence and call quality metrics, including, but not limited to, the amount of time a CSR was clocked in but unavailable to take calls. Further, Defendant assessed and evaluated its CSRs' handling of calls and their recitation of information outlined on Defendant's scripts.

33.    Defendant's CSRs used the same or similar computer networks, software programs, and applications in the course of performing their job responsibilities. These programs and applications were an integral and indispensable part of the CSRs' work and CSRs could not perform their jobs without them.

34.    Defendant's CSRs also performed off-the-clock work when returning from lunch and preparing themselves to be call ready the moment their meal periods concluded.

35.    Similarly, Defendant's CSRs, including Plaintiff, performed work off-the-clock at the end of their scheduled shift, after clocking out of Defendant's timekeeping system, when they shut-down/log out of the programs and applications that they utilized during their shifts.

36.    The pre-, mid-, and post-shift off-the-clock time Plaintiff and Defendant's CSRs spent booting-up/logging into and shutting down their computer, applications and programs directly benefitted Defendant and was integral and indispensable to the CSRs' job responsibilities.

37.    As a result of the pre-, mid-, and post-shift off-the-clock work described herein, Plaintiff and other CSRs were unlawfully deprived of approximately eighteen (18) to twenty (20) minutes of compensation every shift.

38.    At all relevant times, Defendant was able to track the amount of time Plaintiff and other CSRs spent in connection with the pre-, mid-, and post-shift activities; however, Defendant failed to do so and failed to compensate them for the off-the-clock work they performed, thus breaching its agreements with Plaintiff and other CSRs.

39.    Indeed, in light of the explicit and long-standing DOL guidance cited above, there is no conceivable way for Defendant to establish that it acted in good faith.

40.    Despite knowing Plaintiff and all other CSRs performed this pre-, mid-, and post-shift work, Defendant and its managers failed to make any effort to stop or disallow it and instead

suffered and permitted it to happen.

41.     Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiff and similarly situated CSRs booted-up and logged into their computer each shift, along with their clock in and out times in the timekeeping system.

42.     Upon information and belief, Defendant also possesses, controls, and/or has access to information and electronic data indicating when Plaintiff and other CSRs experienced technical issues.

43.     Because Defendant required its CSRs, including Plaintiff, to perform pre-, mid-, and post-shift work off-the-clock, the hours tracked in Defendant's timekeeping system are inaccurate representations of the total amount of time CSRs spent working for Defendant. Thus, the hours reflected on the CSRs' paystubs are also inaccurate representations of the hours they actually worked.

**A.  Pre-Shift Off-the-Clock Work**

44.     The off-the-clock pre-shift process took substantial time, approximately eight (8) to ten (10) minutes per shift. Specifically, before each shift CSRs had to undertake essential work tasks such as turning on or warming up their computer; waiting for the computer to turn on; logging into their computer with a username and password; opening Defendant's VDI; opening Google Chrome and accessing Defendant's Intranet; logging into Defendant's timekeeping system and clocking in.

45.     Defendant's CSRs had to complete this process while off-the-clock, before the start of their scheduled shifts and before fielding calls. Consequently, the CSRs had to begin working at least eight (8) to ten (10) minutes before their scheduled shifts to complete their start-up and log-in activities.

8

46.     Defendant's CSRs were not compensated for all of this time because Defendant prohibited and/or prevented CSRs from clocking into its timekeeping software before they performed some, if not all, of the pre-shift off-the-clock work.

47.     The pre-shift off-the-clock work CSRs performed directly benefitted Defendant, and was integral and indispensable to their job duties and responsibilities as CSRs.

**B.  Meal-Period Off-the-Clock Work**

48.     Defendant promised its CSRs one unpaid 30-minute meal period during each eight (8) hour shift.

49.     Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal period. 29 C.F.R. § 785.19(a) states:

> ***Bona fide meal periods***. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be *completely relieved* from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

50.     Defendant did not provide CSRs with legitimate bona fide meal periods because it required the CSRs to return to their computer stations prior to the end of their unpaid meal periods to log back in and place themselves in a "ready" state so they could resume taking calls promptly at the end of their scheduled meal periods.

51.     If CSRs were not logged back into the phone system and ready to take calls promptly at the conclusion of their scheduled meal periods, they were considered "out of adherence" and could be subjected to disciplinary action.

9

52.     The login process during meal periods was truncated because CSRs already had their computer on and many of the programs they used during their scheduled shifts remained opened; however, CSRs spent approximately five (5) minutes performing this off-the-clock work during their unpaid meal periods. Thus, Defendant maintained a common policy and practice pursuant to which it failed to pay CSRs for no less than five (5) minutes of work performed during their meal periods.

53.     The off-the-clock work Plaintiff and other CSRs performed during their meal periods was compensable, directly benefitted Defendant, and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to the CSRs' job duties and responsibilities.

54.     Defendant's management knew or should have known that Plaintiff and other CSRs performed this off-the-clock work, but permitted and even rewarded it through Defendant's schedule adherence metrics.

**C.  Post-Shift Off-the-Clock Work**

55.     Pursuant to Defendant's policies, training and direction, Plaintiff and similarly situated CSRs were required to clock out as soon as their scheduled shift ended or the moment they finished fielding their last call for the day and *before* closing all work applications and systems they used during their shift and shutting down or restarting their computer. Plaintiff and other CSRs were not allowed to begin the logout and shutdown process until they completed their last fielded call.

56.     This resulted in Plaintiff and other CSRs performing an additional five (5) minutes every shift.

57.     The post-shift off-the-clock work Plaintiff and other CSRs performed was

10

compensable, directly benefitted Defendant and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to the CSRs' job duties and responsibilities.

**D. Plaintiff's Exemplary Workweek**

58.     The FLSA and regular wage violations discussed herein occurred throughout Plaintiff's employment with Defendant; however, as an example of one instance where Defendant failed to pay Plaintiff overtime for hours worked in excess of forty (40) hours (as mandated by the FLSA), Plaintiff identifies one workweek during the period of September 19 through October 2, 2021. With pre- and post-shift off-the-clock work, Plaintiff should have been paid an additional eighteen (18) to twenty (20) minutes or more at her overtime rate for each hour worked in excess of forty (40) in the overtime workweek.

**E. The Off-the-Clock Work Results in Viable "Gap Time" Claims**

59.     "Gap time" claims are those "in which an employee has not worked 40 hours in a given week but seeks recovery of unpaid time worked, or in which an employee has worked over 40 hours in a given week but seeks recovery for unpaid work under 40 hours." *Kinkead v. Humana at Home, Inc.*, 450 F.Supp.3d 162, 182 (D. Conn. Mar. 31, 2020); *see also Conner v. Cleveland Cty., N.C.*, 22 F.4th 412, 426 (4th Cir. 2022) ("we hold that overtime gap time claims are cognizable under the FLSA").

60.     Plaintiff and all similarly situated CSRs regularly worked non-overtime hours (i.e. "gap time") for which they were not paid.

61.     During the weeks that CSRs did not work over forty (40) hours in a workweek, the outcome of Defendant's policies and practices was a deprivation of straight-time wages, in breach of Defendant's agreements with them.

## COLLECTIVE ACTION ALLEGATIONS

62.     Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of themselves and on behalf of:

> *All current and former hourly CSRs who worked for Defendant at any time during the past three years.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

63.     Excluded from the proposed FLSA Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside sales persons.

64.     Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and others similarly situated.

65.     Consistent with Defendant's policies and practices, Plaintiff and the proposed FLSA Collective were not paid for all regular and/or premium overtime compensation in workweeks during which they worked beyond forty (40) hours or more when considering the uncompensated off-the-clock work discussed herein.

66.     All of the work Plaintiff and the proposed FLSA Collective performed was assigned by Defendant, and/or Defendant was aware of all of the work the Plaintiff and the proposed FLSA Collective performed.

67.     Defendant was aware, or should have been aware, that federal law required it to pay Plaintiff and the proposed FLSA Collective members for all hours worked and an overtime premium for all hours worked in excess of forty (40) per workweek.

68.     As part of its regular business practice, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to

Plaintiff and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

      a.  Willfully failing to pay its employees, including Plaintiff and the FLSA Collective members, for all regular hours they worked off-the-clock in non-overtime workweeks;

      b.  Willfully failing to pay its employees, including Plaintiff and the FLSA Collective members, for all overtime gap time and premium overtime wages for hours they worked off-the-clock in excess of forty (40) hours per workweek; and

      c.  Willfully failing to record all of the time that its employees, including Plaintiff and the FLSA Collective members, worked for the benefit of Defendant.

69.    Defendant's unlawful conduct was (and is) widespread, repeated, and consistent.

70.    A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff brings this collective action are similarly situated because: (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

71.    The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues are the same for every proposed FLSA Collective member, to wit: whether the FLSA Collective members are: (1) required to work uncompensated boot up and log out time; and (2) entitled to their regular hourly wage in non-overtime workweeks, overtime gap time in applicable weeks, and overtime for hours worked over forty (40) in a week.

72.    Plaintiff estimates the FLSA Collective, including both current and former CSRs during the relevant period, includes thousands of members. The precise number should be readily

available from a review of Defendant's personnel and payroll records.

73.     The FLSA Collective should be notified of this action and allowed to opt-in pursuant to 29 U.S.C. § 216(b). Unless the Court promptly issues such a notice, the FLSA Collective members, who have been unlawfully deprived of pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which has been unlawfully withheld from them by Defendant.

### **RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS**

74.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of themselves and on behalf of:

> *All current and former hourly CSRs who worked for Defendant at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiff reserves the right to amend this definition if necessary.

75.     The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably estimates there are thousands of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

76.     There is a well-defined community of interests among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions, include, but are not limited to, the following:

> a.   Whether Defendant failed to keep accurate time and payroll records for Plaintiff and the Rule 23 Nationwide Class;

b.  Whether the pre- and mid-shift time Rule 23 Nationwide Class members spent on startup and login activities each shift is compensable time under applicable law;

c.  Whether the post-shift time Rule 23 Nationwide Class members spent closing all programs, applications and networks is compensable time under applicable law;

d.  Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract; and

e.  Whether Defendant's non-payment of wages for all compensable time resulted in an unjust enrichment to Defendant.

77.     Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that they and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

78.     Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiff's retained counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

79.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

80.     This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and

payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

81.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

82.     Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class, and because declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I
## FLSA COLLECTIVE ACTION
## VIOLATION OF THE FAIR LABOR STANDARDS ACT,
## 29 U.S.C. § 201, *et seq*. -- FAILURE TO PAY OVERTIME

83.     Plaintiff re-alleges and incorporates all previous paragraphs herein.

84.     At all times relevant to this action, Defendant was subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq*.

85.     At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

86.     At all times relevant to this action, Plaintiff and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

87.     At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

88.     Plaintiff and other FLSA Collective members, by virtue of their job duties and

activities actually performed, were all non-exempt employees.

89.     Plaintiff either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

90.     The FLSA requires an employer to pay employees for all hours worked and the federally mandated overtime premium rate of 1.5 times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

91.     The FLSA requires all employers to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq*.

92.     At all times relevant to this action, Defendant engaged in an unlawful policy and practice of requiring Plaintiff and all the proposed FLSA Collective members to perform pre-, mid- and post-shift work off the clock, every shift, and failed to pay these employees their regular hourly rate for all hours worked in non-overtime workweeks, overtime gap time in weeks where it occurred, and the federally mandated overtime compensation for all work performed over forty (40) hours per week.

93.     The off-the-clock work performed every shift by Plaintiff and the proposed FLSA Collective was an essential part of their jobs and these activities and the time associated with these activities was significant.

94.     In workweeks where Plaintiff and other FLSA Collective members worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed herein, all of this overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly

wage, including shift differential where applicable. 29 U.S.C. § 207. Further, all "gap time" should have been paid at Plaintiff's and the FLSA Collective's regular hourly rate.

95.     As a result of Defendant's unlawful policies and practices, Plaintiff and the FLSA Collective members were deprived of both straight time and overtime wages in violation of the FLSA.

96.     Defendant's violations of the FLSA were knowing and willful. Defendant could have easily accounted for and properly compensated Plaintiff and the proposed FLSA Collective members for all work activities, but did not.

97.     As a result of the foregoing, Plaintiff was injured and seeks appropriate relief against Defendant including unpaid wages (including unpaid overtime), an additional equal amount in liquidated damages (double damages), reasonable attorneys' fees and costs, interest, and all other relief just and appropriate under the circumstances.

**COUNT II**
**RULE 23 NATIONWIDE CLASS ACTION**
**BREACH OF CONTRACT**

98.     Plaintiff re-alleges and incorporates all previous paragraphs herein.

99.     At all times relevant to this action, Defendant had a binding and valid contract with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed on behalf of Defendant.

100.     Evidence of these contracts include Defendant's offer letters, pay statements, and other documentary evidence in Defendant's possession. Additionally, Defendant made verbal offers for payment at a specified, above minimum wage for hourly employee work, which Plaintiff accepted and performed, but Defendant failed to perform by paying Plaintiff and the Rule 23 Class

the promised wages.

101. For example, Defendant offered to compensate Plaintiff at a minimum of $16.25 per hour if she agreed to perform services for Defendant as a CSR.

102. Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises contained in Defendant's offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre-, mid-, and post-shift work described herein.

103. Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiff, was contractually entitled to a minimum hourly rate of approximately $16.25 per hour within the applicable period.

104. By not paying Plaintiff and every other Rule 23 Nationwide Class member their fixed, pre-agreed upon hourly rate for *all* of the work they performed each shift in connection with the off-the-clock work described herein, Defendant systematically breached its contracts with Plaintiff and each member of the Rule 23 Nationwide Class.

105. Defendant can easily ascertain the amount of damages owed to Plaintiff and the Rule 23 Nationwide Class members based on the allegations made in this Complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with Defendant's payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

106. Plaintiff and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them *more* than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (*i.e.*, pure "gap time" claims for non-overtime hours/workweeks).

107.    Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

108.    As a direct and proximate result of Defendant's contractual breaches, Plaintiff and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

**COUNT III**
**RULE 23 NATIONWIDE CLASS ACTION**
**UNJUST ENRICHMENT**

109.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

110.    This Count is pled in the alternative to Count II, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

111.    At all times relevant to this action, Defendant promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for Defendant's benefit.

112.    Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

113.    By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

114.    Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

115.    Defendant received and accepted the above-referenced off-the-clock work services

from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

116.    Upon information and belief, Defendant used the monies owed to Plaintiff and every other Rule 23 Nationwide Class member to finance its various business ventures or pay its equity owners.

117.    Defendant was unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

118.    Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

119.    As a direct and proximate result of Defendant's actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff requests the following relief:

a.    An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.    An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's breach of contract claim (Count II);

c.    An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's unjust enrichment claim (Count III);

d.    An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all proposed FLSA Collective members and Rule 23 Nationwide Class members, and

authorizing Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

e.      An Order designating the Plaintiff as representative of the FLSA Collective and the Rule 23 Nationwide Class, and undersigned counsel as Class Counsel for the same;

f.      An Order declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

g.      An Order declaring Defendant's violations of the FLSA were willful;

h.      An Order declaring Defendant breached its contracts with Plaintiff and the members of the Rule 23 Nationwide Class by failing to pay them for each hour they worked at a pre-established (contractual) regularly hourly rate;

i.      An Order declaring Defendant was unjustly enriched by the off-the-clock work it required Plaintiff and the members of the Rule 23 Nationwide Class to perform;

j.      An Order granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff, the FLSA Collective and the Rule 23 Nationwide Class the full amount of damages and liquidated damages available by law;

k.      An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in prosecuting this action as provided by statute;

l.      An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

m.      An Order awarding such other and further relief as this Court deems appropriate.

## <u>JURY DEMAND</u>

Plaintiff, Detrina Solomon, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: October 5, 2023

Respectfully Submitted,

*/s/ Kevin J. Stoops*
Kevin J. Stoops
Alana A. Karbal
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Telephone: 248-355-0300
kstoops@sommers.com
akarbal@sommerspc.com

*Attorneys for Plaintiff and the Putative*
*Class/Collective Action Members*